No. 23-1453

# In the United States Court of Appeals for the Fourth Circuit

_____

DONNA BUETTNER-HARTSOE; N.H., by and through her
Parent and Next Friend Donna Buettner-Hartsoe,
Plaintiffs-Appellees

v.

BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION, d/b/a
Concordia Preparatory School,
Defendant-Appellant

_____

On Appeal from the U.S. District Court for the
District of Maryland (No. 1:20−cv−03132−RDB)
(Honorable Richard D. Bennett, U.S. District Judge)

_____

BRIEF FOR PLAINTIFFS/APPELLEES

_____

Howard J. Bashman
500 Office Center Drive
Suite 400
Fort Washington, PA 19034
(215) 830–1458

Brian Ketterer
Whitney J. Butcher
KETTERER, BROWNE &
 ASSOCIATES, LLC
336 South Main Street
Bel Air, MD 21014
(410) 896-6037

Counsel for Plaintiffs/Appellees

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................1

II.     ISSUE ON APPEAL ...............................................................................4

III.    STATEMENT OF THE CASE..................................................................5

   A. Relevant Factual History .................................................................5

   B. Relevant Procedural History.............................................................8

IV.     SUMMARY OF THE ARGUMENT ......................................................10

V.      ARGUMENT ........................................................................................13

   A. The District Court Correctly Held That A 501(c)(3) Federal Tax
      Exemption Qualifies As Federal Financial Assistance Under
      Title IX ...........................................................................................13

   B. The Spending Clause Requirement That Conditions On The
      Receipt Of Federal Financial Assistance Must Be
      Unambiguously Communicated Does Not Apply To
      Determining Whether A Party Is The Recipient Of Federal
      Financial Assistance .......................................................................19

   C. The District Court Decisions And Other Materials Cited By
      Concordia Prep In Support Of Reversal Lack Persuasiveness ...........26

   D. The Policy Arguments That Concordia Prep Advances For
      Reversal Are Unpersuasive..............................................................33

VI.     CONCLUSION......................................................................................35

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arlington Central School Dist.* v. *Murphy*, 548 U.S. 291 (2006) .........................23

*Bachman* v. *American Soc'y of Clinical Pathologists*,
    577 F. Supp. 1257 (D.N.J. 1983) ..................................................................29

*Barnes* v. *Gorman*, 536 U.S. 181 (2002) ................................................................22

*Cannon* v. *University of Chicago*, 441 U.S. 677 (1979) .........................................13

*Chaplin* v. *Consolidated Edison Co.*, 628 F. Supp. 143 (S.D.N.Y. 1986) .............28

*Chevron, Inc.* v. *Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) .....................................................................................30

*Cummings* v. *Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022) ...........22, 23

*Davis ex rel. LaShonda D.* v. *Monroe County Board of Educ.*,
    526 U.S. 629 (1999) .....................................................................................21

*E.H. ex rel. Herrera* v. *Valley Christian Academy*,
    616 F. Supp. 3d 1040 (C.D. Cal. 2022).........................................................17

*Franklin* v. *Gwinnett County Public Schools*, 503 U.S. 60 (1992).........................33

*Fulani* v. *League of Women Voters Educ. Fund*,
    684 F. Supp. 1185 (S.D.N.Y. 1988)..............................................................18

*Gebser* v. *Lago Vista Indep. School Dist.*, 524 U.S. 274 (1998) .............................21

*Graham* v. *Tennessee Secondary School Athletic Ass'n*,
    1995 WL 115890 (E.D. Tenn. 1995) .......................................................27, 28

*Green* v. *Connally*, 330 F. Supp. 1150 (D.D.C. 1971) ....................................17, 18

*Grove City College* v. *Bell*, 465 U.S. 555 (1984) ........................3, 11, 13, 14, 23, 27

*Johnny's Icehouse, Inc.* v. *Amateur Hockey Ass'n*,
    134 F. Supp. 2d 965 (N.D. Ill. 2001) ...........................................................27

*Johnson* v. *Guzman Chavez*, 141 S. Ct. 2271 (2021).............................................30

*Martin* v. *Delaware Law School*, 625 F. Supp. 1288 (D. Del. 1985) ....................29

*McGlotten* v. *Connally*, 338 F. Supp. 448 (D.D.C. 1972) ..............................18, 24

*Merrifield* v. *Beaven/Inter-American Cos.*, 1991 WL 171376 (N.D. Ill. 1991) ....28

*M.H.D.* v. *Westminster Schools*, 172 F.3d 797 (11th Cir. 1999)....................16, 17

*Peltier* v. *Charter Day School, Inc.*, 37 F.4th 104 (4th Cir. 2022) (en banc) .......30

*Pennhurst State School* v. *Halderman*, 451 U.S. 1 (1981) ...............................20, 21

*Regan* v. *Taxation With Representation*, 461 U.S. 540 (1983) ..............................13

*Russo* v. *Diocese of Greensburg*, 2010 WL 3656579 (W.D. Pa. 2010) .................27

*Stewart* v. *New York Univ.*, 430 F. Supp. 1305 (S.D.N.Y. 1976) ........................29

*United States Dep't of Transp.* v. *Paralyzed Veterans of Am.*,
    477 U.S. 597 (1986) ................................................................................15, 16

*Walz* v. *Tax Comm'n*, 397 U.S. 664 (1970)......................................................14, 15

*Zimmerman* v. *Poly Prep Country Day School*,
    888 F. Supp. 2d 317 (E.D.N.Y. 2012) .......................................................26

**Statutes**

20 U.S.C. §1681(a) .........................................................................1, 19

26 U.S.C. §501(c)(3) ........................................................................*passim*

**Federal Regulations**

31 C.F.R. §28.105 ..............................................................................3, 24

34 C.F.R. §106.2(g) .......................................................................3, 24, 27

**Other Authorities**

Amy B. Cyphert, *Objectively Offensive: The Problem of Applying
    Title IX to Very Young Students*, 51 Family L.Q. 325 (2017) ..................33

## I. INTRODUCTION

Title IX of the Education Amendments Act of 1972 provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. §1681(a).

At issue in this interlocutory appeal by permission is "whether 501(c)(3) tax exempt status constitutes federal financial assistance under Title IX." JA476. The district court answered this question in the affirmative in a well-reasoned opinion. JA105-117. Defendant Baltimore Lutheran High School, d/b/a Concordia Preparatory School (hereinafter Concordia Prep), maintains that the district court erred and that its interlocutory order denying Concordia Prep's motion for partial summary judgment should be reversed.

Title IX, it is undisputed for purposes of this appeal, is a form of Spending Clause legislation. In exchange for receiving federal financial assistance, recipients must comply with Title IX's provisions. Given the contractual nature of Spending Clause legislation, the Supreme Court and this Court have held that the conditions that Title IX imposes on the

recipients of federal financial assistance must be communicated unambiguously. Courts have applied this requirement both to the scope of what Title IX covers — meaning what actions or inactions will subject a recipient to liability — and to what forms of relief are available under Title IX.

However, contrary to the centerpiece of Concordia Prep's argument here, neither the Supreme Court nor this Court has applied the "must be communicated unambiguously" requirement to determining whether the entity that receives federal financial assistance knew or had reason to know that it was subjecting itself to Title IX's requirements as the result of receiving that financial assistance.

Here, it is undisputed that Concordia Prep knowingly and intentionally sought and obtained federal tax-exempt status under 26 U.S.C. §501(c)(3) and continues to enjoy that status even now. JA055, JA116. It is further undisputed that having 501(c)(3) status has conferred significant financial benefits on Concordia Prep. JA313-317. Stated plainly, Concordia Prep has more money at its disposal as a result of being a 501(c)(3) organization than it would otherwise have. *Id.* If Concordia Prep wishes to escape the

obligations that Title IX imposes, the school can forfeit its 501(c)(3) status at any time.

In *Grove City College* v. *Bell*, 465 U.S. 555, 565, 569-70 (1984), the Supreme Court made clear that an educational institution is the recipient of federal financial assistance whether the money is received directly or indirectly. Moreover, according to the regulations defining federal financial assistance for purposes of Title IX on which Concordia Prep relies (Blue Br. at 16-18), federal financial assistance need not consist of money flowing from federal coffers into the bank account of an educational institution. *See* 31 C.F.R. §28.105; 34 C.F.R. §106.2(g). Again, it is undisputed here that Concordia Prep has more money at its disposal as the result of its 501(c)(3) status than had it not affirmatively sought to obtain, and affirmatively decided to retain, its federal tax-exempt status.

Having demonstrated that Concordia Prep is wrong in maintaining that the "must be communicated unambiguously" requirement extends to whether an entity is "receiving Federal financial assistance," this case boils down to whether the district court and other courts that have reached the same conclusion were correct in determining that 501(c)(3) status equates to receiving federal financial assistance. For the reasons demonstrated

herein, the district court in this case reached the correct result. Concordia Prep's argument that it would be too difficult for a small school to comply with Title IX is refuted by the fact that small schools do just that day-in and day-out. And the argument that it would be burdensome for 501(c)(3) organizations to comply with other Spending Clause mandates is refuted by the fact that no organization is forced to obtain or retain 501(c)(3) status against its will.

For these reasons and the reasons set forth below, the district court's decision should be affirmed.

## II. ISSUE ON APPEAL

The issue that the district court certified for interlocutory appeal by permission (JA476) and that this Court accepted for review is:

> Whether 501(c)(3) tax exempt status constitutes federal financial assistance under Title IX?

JA476, JA605-606.

## III.   STATEMENT OF THE CASE

### A. Relevant Factual History

Although it may be tempting to view this case as presenting a question of law that exists in a vacuum, the facts that give rise to this case are critically important to resolving the legal issue that this case presents.

Plaintiff N.H. was a student at Concordia Prep in the 2017-2018 school year. JA108. However, her allegations are not simply that she was sexually harassed, assaulted, and bullied in that timeframe; her allegations are also that Concordia Prep's overt and covert actions, before, during, and after the time of her enrollment at Concordia Prep, created an atmosphere where she and others like her were more likely to be victimized and injured by the culture of rampant sexual misconduct within the school. JA018-026.

This is corroborated by evidence in the record from a member of the Concordia Prep Board of Directors, who sounded the alarm bell with the Board and Headmaster Brent Johnson, decrying the culture of sexual misconduct in existence at Concordia Prep before and during the 2019-2020 school year; emails from parents to Concordia Prep administrators regarding concerns of sexual misconduct on campus in 2019; testimony from Concordia Prep administrators concerning its knowledge of rumors

of sexual misconduct on campus as far back as 2008 and even up until 2020; testimony from Concordia Prep administrators concerning the school's knowledge of inappropriate sexual conduct on campus involving nude photos as far back as 2009; and testimony from Concordia Prep administrators and related documents concerning the school's knowledge of child pornography circulating on campus in 2018. JA063.

For purposes of this appeal, Concordia Prep does not dispute that N.H. and her mother, the plaintiffs herein, have asserted and substantiated claims that are cognizable under Title IX and that, if proven to the satisfaction of the fact-finder, would enable them to recover damages under Title IX against Concordia Prep.

It is also undisputed that Concordia Prep operates under the aegis of tax exemption for non-profit organizations pursuant to section 501(c)(3) of the Internal Revenue Code. JA055, JA116. In Baltimore Lutheran High School Association's Audited Financial Statements for 2010-2019, the school expressly confirms its tax-exempt status under 501(c)(3) in each of its annual reports, beginning in 2010 and continuing through the 2019-2020 fiscal year. JA055.

An organization doesn't simply have 501(c)(3) status magically bestowed upon it. Rather, an organization seeking 501(c)(3) status must apply for the status and demonstrate that it qualifies to receive the status. Among the benefits of having 501(c)(3) status is that an organization no longer has to pay federal taxes on its income. In addition, third-party donors can themselves seek and obtain a tax deduction for making charitable contributions to a 501(c)(3) organization. Such tax deductions, when applicable, can result in the organization receiving larger contributions than it would receive were a tax deduction not available.

For example, if someone was subject to a 30-percent federal tax rate, earning $200 would result in a net income of $140 after paying $60 in federal taxes on those earnings. If that same person donated the $200 instead to a 501(c)(3) organization and was able to claim a tax deduction for the entire amount of the donation, he or she would avoid having to pay any taxes on the $200 and thus the organization would receive the full amount earned pre-tax, instead of receiving only $140 after taxes if the donor was not entitled to claim a federal tax deduction.

These two scenarios that a 501(c)(3) organization regularly enjoys — not having to pay federal taxes on its own income, and qualifying to receive

larger donations from donors who can deduct the amount of the donation pre-tax from their own federal net income otherwise subject to taxation — are among the ways that having 501(c)(3) status provides direct financial benefit to organizations such as Concordia Prep.

The evidence in the record before the district court confirms that Concordia Prep repeatedly sought to maximize the charitable donations it received by touting its 501(c)(3) status. JA313-317. It would be laughable for Concordia Prep to contend on the record of this case that it did not obtain substantial financial benefit as the result of having its 501(c)(3) status, and no doubt that explains why Concordia Prep has failed to deny that having 501(c)(3) status has benefitted it greatly by increasing the money it has on hand to spend for whatever purposes it may choose.

## B. Relevant Procedural History

Plaintiffs Donna Buettner-Hartsoe and her daughter, N.H., initiated this suit in the U.S. District Court for the District of Maryland on October 28, 2020. JA1. This suit ended up being one of five separate cases, all involving similar allegations against the same defendants but brought by different

plaintiffs, that were consolidated for resolution by the district court in the decision now under review. JA105-117.

Thus, there were five different female students of Concordia Prep who sought relief under Title IX alleging sexual assault and severe sexual harassment and bullying during the same time period. JA106. They alleged, among other things, that school officials failed to adequately address their numerous complaints or take any meaningful action in response, thereby cultivating a hyper-sexualized culture at the school. JA106-107.

In all five cases, defendant Concordia Prep eventually filed a motion to dismiss, or in the alternative for partial summary judgment, asserting that plaintiffs' claims against them under Title IX could not proceed because Concordia Prep supposedly did not receive federal financial assistance during the relevant time. JA107. The district court construed Concordia Prep's motion as seeking partial summary judgment and denied the motion on the merits. JA108. As the district court's Memorandum Opinion explained, "This argument is without merit, as the tax-exempt status of the Defendant under 26 U.S.C. §501(c)(3) constitutes federal financial assistance for the purposes of Title IX." JA107.

Concordia Prep thereafter moved for reconsideration or, in the alternative, for certification of the district court's order for interlocutory appeal by permission. JA121. After briefing and oral argument, including the submission of numerous trial court amicus briefs in support of Concordia Prep that the district court considered, the district court concluded that reconsideration was not merited. JA480. However, the district court agreed to certify its order for interlocutory appeal by permission. *Id.* Concordia Prep then filed a Petition for Permission to Appeal in this Court, which this Court granted. JA605-606.

## IV.   SUMMARY OF THE ARGUMENT

The district court correctly held that defendant Concordia Prep's 501(c)(3) tax-exempt status constituted federal financial assistance for purposes of Title IX, and its decision should therefore be affirmed.

In seeking reversal, Concordia Prep asserts that only if it were unambiguously clear that 501(c)(3) status could subject an organization to Title IX would affirmance be proper, but that argument is meritless.

In connection with Title IX and other Spending Clause legislation, the U.S. Supreme Court and this Court have limited their application of the

"unambiguously clear" requirement to two categories of issues: (1) whether liability exists under the Act for the wrongdoing alleged; and (2) whether the forms of relief being pursued are available remedies in the breach-of-contract setting in which these claims arise. By contrast, no precedent establishes that the "unambiguously clear" requirement also applies to whether a Title IX defendant was, or intended to become, the recipient of federal financial assistance.

The U.S. Supreme Court in *Grove City College*, *supra*, held that federal financial assistance can exist whether direct or indirect. In this case, it exists indirectly due to the many financial benefits Concordia Prep realizes thanks to its 501(c)(3) status. Moreover, the regulations on which Concordia Prep relies defining federal financial assistance for purposes of Title IX actually help plaintiffs here, because they demonstrate that it is not necessary for money to flow from federal coffers to the bank account of an organization for that organization to receive federal financial assistance.

The contractual element of a Spending Clause obligation is satisfied here because Concordia Prep purposefully sought 501(c)(3) status to obtain the financial benefits it afforded. And Title IX, enacted in 1972, gives clear notice that recipients of federal financial assistance are subject to its

provisions. Whether Concordia Prep knew or should have known that, as a result of its 501(c)(3) status, it was subject to Title IX is irrelevant, because that is simply not a requirement for establishing whether an organization receives federal financial assistance.

Concordia Prep's other arguments for reversal fare no better. The contention that small schools cannot feasibly comply with Title IX is refuted by the fact that small schools and small colleges are and have been routinely doing so. It would not even require the hiring of any additional employees. And the concern that affirmance might affect countless other 501(c)(3) organizations by requiring them to comply with the laudatory goals of this or other Spending Clause legislation is difficult to get too worked up over, given that 501(c)(3) status has been forced on no one and can be forfeited upon request.

The district court correctly held that Concordia Prep is subject to Title IX as the result of its 501(c)(3) status, and that decision should be affirmed.

## V. ARGUMENT

### A. The District Court Correctly Held That A 501(c)(3) Federal Tax Exemption Qualifies As Federal Financial Assistance Under Title IX

In *Cannon* v. *University of Chicago*, 441 U.S. 677 (1979), the Supreme Court recognized that "Title IX, like its model Title VI, sought to accomplish two related, but nevertheless somewhat different, objectives. First, Congress wanted to avoid the use of federal resources to support discriminatory practices; second, it wanted to provide individual citizens effective protection against those practices." *Id.* at 704.

In *Regan* v. *Taxation With Representation*, 461 U.S. 540 (1983), then-Justice Rehnquist's opinion for the Court, in a case involving a 501(c)(3) exemption, explained that "[b]oth tax exemptions and tax-deductibility are a form of subsidy that is administered through the tax system. A tax exemption has much the same effect as a cash grant to the organization of the amount of tax it would have to pay on its income." *Regan*, 461 U.S. at 544.

In a case that involved Title IX, the Supreme Court ruled in *Grove City College* v. *Bell*, 465 U.S. 555 (1984), that "Title IX coverage is not foreclosed because federal funds are granted to Grove City's students rather than

directly to one of the College's educational programs." *Id.* at 569-70. The Court recognized therein that "[t]he economic effect of direct and indirect assistance is often indistinguishable." *Id.* at 565.

The *Grove City* case is noteworthy because that educational institution *did not* want to be subject to Title IX and affirmatively sought to avoid Title IX's strictures and requirements. Rejecting the college's desire to avoid Title IX's application, the Supreme Court ruled that the fact that students attending the college had received federal Basic Educational Opportunity Grants (BEOG) sufficed to subject the college's financial aid program to Title IX. *See Grove City*, 465 U.S. at 559-62, 573-76. *Grove City* directly refutes Concordia Prep's argument that an educational institution can only be subjected to Title IX if it knowingly and voluntarily agrees to be.[1]

Given *Grove City*'s holding that indirect economic benefit can suffice to constitute receiving federal financial assistance for purposes of Title IX, it is especially noteworthy that in *Walz* v. *Tax Comm'n*, 397 U.S. 664 (1970), the

---

[1] The Supreme Court in *Grove City* recognized that the school could choose going forward to "terminate its participation in the BEOG program and thus avoid the requirements of" Title IX. *See* 465 U.S. at 575. Similarly here, Concordia Prep can choose to no longer be subjected to Title IX in the future by opting to forfeit its 501(c)(3) exemption.

Supreme Court recognized that "[g]ranting tax exemptions to churches necessarily operates to afford an indirect economic benefit . . . ." *Id.* at 674.

A couple of more recent Supreme Court cases examine when the economic benefit of receiving federal financial assistance is too indirect to subject the supposed recipient to Spending Clause obligations. In *United States Dep't of Transp.* v. *Paralyzed Veterans of Am.*, 477 U.S. 597 (1986), the Supreme Court held that federal grants used to build airport runways and the federal government's funding and operation of the federal air traffic control system were both too indirect to cause airlines to be the recipients of federal financial assistance under the Rehabilitation Act. According to the Court, the argument that the airlines were thus subject to the Rehabilitation Act "confuses intended *beneficiaries* with intended *recipients*" of federal financial assistance. *Id.* at 606.

For present purposes, however, the Supreme Court's ruling in *Paralyzed Veterans* is most noteworthy for what the decision *did not* say — nowhere in the ruling did the airlines argue or did the Court hold that the Rehabilitation Act could not apply to the airlines because they never voluntarily agreed to be subjected to its requirements of the Rehabilitation Act as the result of having federal funding pay for airport runways or

having the federal government create and fund an air traffic control system. If the argument that Concordia Prep presses here were valid — that the alleged recipient of federal financial assistance must agree to accept it knowing that doing so would trigger Spending Clause liability — then that argument certainly would have proved dispositive in *Paralyzed Veterans*. No one made that argument there because the argument simply doesn't fly. In any event, here the federal financial assistance that Concordia Prep realizes from its 501(c)(3) exemption flows directly into that educational institution's bank account.

In a decision the relevant aspect of which Concordia Prep incorrectly dismisses as *dicta*, the Eleventh Circuit in *M.H.D.* v. *Westminster Schools*, 172 F.3d 797 (11th Cir. 1999), held that "appellant's allegation that tax-exempt status constitutes 'Federal financial assistance' is neither immaterial nor wholly frivolous," and thus the district court possessed subject-matter jurisdiction over the plaintiff's Title IX claims in the case. *Id.* at 802 n.12. Indeed, the Eleventh Circuit's discussion of the issue cannot even legitimately be regarded as "faint praise," because the standard for determining whether subject matter jurisdiction exists asks merely whether the claim is "wholly insubstantial and frivolous." *Id.* (internal quotations

omitted). Because the Eleventh Circuit ruled against the plaintiff's claim in that case on statute of limitations grounds, it had no occasion to delve any further into whether "a federal tax exemption actually constitutes 'Federal financial assistance' under Title IX." *Id.* To be sure, the Eleventh Circuit in *M.H.D.* did not decide the issue that this appeal presents, but what it did decide relating to that issue did not constitute *dicta* in the circumstances of that case.

More recently, in *E.H. ex rel. Herrera* v. *Valley Christian Academy*, 616 F. Supp. 3d 1040 (C.D. Cal. 2022), the district court reached exactly the same result as the district court in this case: "the Court holds that Valley Christian's tax-exempt status confers a federal financial benefit that obligates compliance with Title IX." *Id.* at 1050. The decision under review here is far from the outlier that Concordia Prep attempts to depict.

Other federal district court decisions also support the district court's ruling now before this Court for review. In *Green* v. *Connally*, 330 F. Supp. 1150 (D.D.C. 1971), a three-judge federal district court issued a decision explaining that "tax exemptions and deductions certainly constitute a Federal Government benefit and support," while recognizing "that support

is indirect, and is in the nature of a matching grant rather than an unconditional grant . . . ." *Id.* at 1164-65.

Similarly, in *McGlotten* v. *Connally*, 338 F. Supp. 448 (D.D.C. 1972), a three-judge federal district court reasoned as follows:

> We think there is little question that the provision of a tax deduction for charitable contributions is a grant of federal financial assistance within the scope of the 1964 Civil Rights Act. "The charitable contribution deduction is a special tax provision not required by, and contrary to, widely accepted definitions of income applicable to the determination of the structure of an income tax." It operates in effect as a Government matching grant and is available only for the particular purposes and to the particular organizations outlined in the Code. We see no difference between the provision of Federal property "at a consideration which is reduced . . . in recognition of the public interest to be served by such sale or lease to the recipient," and a tax deduction in the form of a matching grant provided for contributions to causes deemed worthy by the Internal Revenue Code.

*Id.* at 462 (footnotes omitted); *see also Fulani* v. *League of Women Voters Educ. Fund*, 684 F. Supp. 1185, 1192 (S.D.N.Y. 1988) (holding, in the context of plaintiff's Title VI and Title IX claims, that "the League receives federal assistance indirectly through its tax exemption" before rejecting those claims on the merits for other reasons).

Concordia Prep incorrectly attempts to characterize the district court's conclusion that 501(c)(3) status constitutes the receipt of federal financial

support for purposes of Title IX as an outlier having scant support. On the contrary, as the many decisions discussed above demonstrate, the district court's ruling is well-supported and is correct as a matter of law.

**B. The Spending Clause Requirement That Conditions On The Receipt Of Federal Financial Assistance Must Be Unambiguously Communicated Does Not Apply To Determining Whether A Party Is The Recipient Of Federal Financial Assistance**

Section 1681(a) of Title 20, United States Code, expressly stating that Title IX applies to "any education program or activity receiving Federal financial assistance," provides the necessary notice for Title IX to be applied to Concordia Prep in this case. 20 U.S.C. §1681(a). Concordia Prep has failed to identify any precedent specifically holding that it (or any other recipient of federal financial assistance) was entitled to receive clearer or more emphatic notice that Title IX would apply. In any event, here Concordia Prep did have additional notice, in the form of the precedents on which the district court relied in holding that a 501(c)(3) exemption equates to "receiving Federal financial assistance."

Lacking any case law directly on-point in support of its argument, Concordia Prep is forced to engage in an elaborate work-around, relying

on plainly inapplicable rulings and then trying to extend their holdings to the question of whether "federal financial assistance" is or is not being received. Concordia Prep's extraordinary efforts in this regard fail to persuade.

Relying on case law establishing that conditions on the receipt of federal financial assistance must be communicated unambiguously in order to satisfy the contractual nature of Spending Clause obligations, Concordia Prep's principal argument for reversal is that the school was not on notice that its 501(c)(3) tax exemption would equate to federal financial assistance for purposes of Title IX.

Unfortunately for Concordia Prep, the "must be communicated unambiguously" requirement applies only to the types of conduct that can give rise to liability and the types of recovery available on a claim that is considered to be contractual in nature.

The requirement in question traces its origin to the U.S. Supreme Court's ruling in *Pennhurst State School* v. *Halderman*, 451 U.S. 1 (1981), which explained that "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.* at 17. In *Pennhurst* itself, the Court ruled that "we find nothing in the Act or its

legislative history to suggest that Congress intended to require the States to assume the high cost of providing 'appropriate treatment' in the 'least restrictive environment' to their mentally retarded citizens." *Id.* at 18. Thus, in *Pennhurst*, the thing that had to have been communicated unambiguously under the federal law at issue was whether Congress had clearly imposed certain substantive responsibilities on the recipients of federal aid.

The Court applied a similar analysis in two more recent Title IX cases. In the first, *Gebser* v. *Lago Vista Indep. School Dist.*, 524 U.S. 274 (1998), the Court resolved under what circumstances a school district could be held liable under Title IX where a school teacher had sexually harassed a high school student. *See id.* at 285–88. And, in *Davis ex rel. LaShonda D.* v. *Monroe County Board of Educ.*, 526 U.S. 629 (1999), the Court decided what wrongful conduct will subject a school board to liability under Title IX in a case, like this one, involving student-on-student sexual harassment. *Id.* at 639-43.

*Pennhurst*, *Gebser*, and *Davis* are all cases in which the Supreme Court addressed the "must be unambiguously communicated" requirement in reference to the conduct that was alleged to violate the Spending Clause statute applicable to the defendant in each case. None of these three cases

held that the "must be communicated unambiguously" requirement applied to whether the defendants in those cases were or were not recipients of federal financial assistance.

The Supreme Court has also applied the "must be communicated unambiguously" requirement to another thing — the type of relief available to plaintiffs who prevail in suits of this nature — but that too fails to support Concordia Prep's effort to obtain reversal here.

In *Barnes* v. *Gorman*, 536 U.S. 181 (2002), the Supreme Court held that punitive damages could not be recovered on a private cause of action under the Americans with Disabilities Act or the Rehabilitation Act, because Spending Clause obligations are contractual in nature, and punitive damages are not ordinarily recoverable in an action for breach of contract. *Id.* at 185-89.

Similarly, in *Cummings* v. *Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), perhaps the case on which Concordia Prep relies most heavily in its Brief for Appellant, the Supreme Court ruled that emotional distress damages are not available under the Rehabilitation Act or the Affordable Care Act, because Spending Clause obligations are contractual in nature, and emotional distress damages are not ordinarily recoverable in an action

for breach of contract. *Id.* at 1570-76; *see also Arlington Central School Dist.* v. *Murphy*, 548 U.S. 291, 296-304 (2006) (holding that expert fees were not recoverable as costs to the prevailing parents in an Individuals with Disabilities Education Act case because the obligation was not unambiguously apparent).

The "must be communicated unambiguously" authorities discussed above thus fall into two categories: they either involve the type of conduct giving rise to liability, or they involve the sort of recovery that can be awarded if a claim succeeds. None of these cases stands for the proposition that whether the defendant is the recipient of federal financial assistance must be communicated unambiguously.

Perhaps one could reason that the issue never arises because whether an organization has affirmatively opted to accept federal financial assistance is rarely at issue in a Spending Clause dispute, especially where actual money is being paid from the federal government's coffers to a private party. But not every case involves that scenario. Take *Grove City*, for example, where it was financial aid being provided to students that constituted the federal financial assistance that the college would be accepting, whether it knew of its existence or not.

Or consider the many things defined as federal financial assistance for purposes of Title IX in the applicable regulations on which Concordia Prep relies. In many of those instances, such as using federal property for less than fair market consideration or receiving the services of federal personnel, the recipient may not necessarily realize that it has received federal financial assistance because no transfer of money was involved. *See* 31 C.F.R. §28.105; 34 C.F.R. §106.2(g)(3) & (4). Notably, in *McGlotten*, *supra*, a three-judge D.C. district court equated a 501(c) exemption to the provision of federal property at reduced consideration, which these regulations expressly say constitutes receiving federal financial assistance. *See* 338 F. Supp. at 462.

Although Concordia Prep may claim ignorance concerning whether its 501(c)(3) tax exemption constitutes receiving federal financial assistance, it is undisputed here that, as a result of having that tax exemption, Concordia Prep ended up with far more money at its disposal than it otherwise would have possessed. Moreover, the exemption was not conferred by happenstance on Concordia Prep. Rather, Concordia Prep had to request 501(c)(3) status and then demonstrate that it qualified to receive it, and it must continue to do certain things (such as satisfying various reporting

requirements) in order to maintain it. And guess where the extra money that Concordia Prep gets to enjoy as the result of its 501(c)(3) status would instead end up if Concordia Prep lacked that status? Answer: Inside the coffers of the federal government as tax receipts. Under these circumstances, for Concordia Prep to deny that it is the recipient of federal financial assistance is to deny reality.

To summarize, the centerpiece of Concordia Prep's argument for reversal is entirely without support. The Supreme Court has never held that the "must be communicated unambiguously" requirement, applicable to certain aspects of Spending Clause disputes, extends to whether the organization being sued realized or intended it would be the recipient of federal financial assistance. In any event, here the reason why Concordia Prep qualifies as the recipient of federal financial assistance is because it purposefully sought and obtained 501(c)(3) status and took the affirmative steps necessary to achieve that status. And, if Concordia Prep truly does not want to be subject to Title IX's provisions, it has the option to forfeit its 501(c)(3) status, at which point going forward it will be free from Title IX's constraints.

For these reasons, this Court should affirm the district court's order denying Concordia Prep's motion for partial summary judgment.

## C. The District Court Decisions And Other Materials Cited By Concordia Prep In Support Of Reversal Lack Persuasiveness

District courts have divided over whether 501(c)(3) status equates to receiving federal financial assistance for purposes of Title IX or other Spending Clause provisions. However, a review of the case law that Concordia Prep has identified as supporting reversal demonstrates its unpersuasiveness.

Reviewing the cases from newest to oldest, let's begin with the decision in *Zimmerman* v. *Poly Prep Country Day School*, 888 F. Supp. 2d 317 (E.D.N.Y. 2012). That decision's analysis consists of a single footnote stating, in a perfunctory manner, that plaintiffs "further allege that Poly Prep enjoys tax-exempt status. Courts have held, however, that such status does not constitute federal financial assistance within the meaning of Title IX." *Id.* at 332 n.2. Although the quote refers to "courts," the lone authority cited consists of a Southern District of New York decision from 1976, which will be the final case we discuss in our reverse chronological examination

of the district court decisions that Concordia Prep says support reversal here.

Next up is *Russo* v. *Diocese of Greensburg*, 2010 WL 3656579 (W.D. Pa. 2010). That decision contains merely *dicta* in which the district court states "we are inclined to express our doubt, without necessarily deciding, that Russo could prove that . . . obtaining tax exempt status would transform a private, parochial school into a recipient of Federal Financial Assistance for purposes of Title IX and/or the Rehabilitation Act." *Id.* at *3. Thus, *Russo* fails to contain any actual holding to support Concordia Prep here.

*Johnny's Icehouse, Inc.* v. *Amateur Hockey Ass'n*, 134 F. Supp. 2d 965 (N.D. Ill. 2001), stands perhaps as the strongest rejection of the outcome that the district court reached in this case. Therein, the district court held that "'federal financial assistance' encompasses only direct transfers of federal money, property or services from the government or a program," *id.* at 972, relying on 34 C.F.R. §106.2(g). But that cramped view runs headlong into *Grove City*'s recognition that federal financial assistance will exist whether direct or indirect and thus lacks persuasiveness.

*Graham* v. *Tennessee Secondary School Athletic Ass'n*, 1995 WL 115890 (E.D. Tenn. 1995), merely observes in a footnote that courts have come to

different conclusions whether tax-exempt status equals federal financial assistance, but the Court in *Graham* does not express its own conclusion on that issue. *Id.* at *11 n.4. Indeed, the holding that the district court reached in that case was that, for other reasons, "TSSAA therefore comes within the ambit of Title VI," *id.* at 11, and thus it was unnecessary to address whether the organization's tax-exempt status would by itself suffice.

Concordia Prep's reliance on *Merrifield* v. *Beaven/Inter-American Cos.*, 1991 WL 171376 (N.D. Ill. 1991), is highly questionable. The defendant in that case did not have 501(c)(3) status. Rather, the district court's statement therein that "[t]he term 'assistance' connotes transfer of government funds by way of subsidy, not merely exemption from taxation," 1991 WL 171376, at *3, rejected the plaintiff's argument that, because the defendant operated 401(k) retirement plans for its employees, the defendant therefore was the recipient of federal financial assistance.

Concordia Prep's reliance on *Chaplin* v. *Consolidated Edison Co.*, 628 F. Supp. 143 (S.D.N.Y. 1986), is similarly questionable. Obviously, Con Ed (a major New York City-based power supplier) was not a 501(c)(3) organization. That decision has no bearing on the correctness of the district court's ruling in this case.

The relevant portion of *Martin* v. *Delaware Law School*, 625 F. Supp. 1288 (D. Del. 1985), consists of a footnote stating, without any reasoning or analysis, that "'assistance' connotes the transfer of government funds by way of subsidy, not merely exemption from taxation." *Id.* at 1302 n.13. In so ruling, the district court in *Martin* relied on *Bachman* v. *American Soc'y of Clinical Pathologists*, 577 F. Supp. 1257 (D.N.J. 1983). And *Bachman* based its conclusion on the definition of "federal financial assistance" found in regulations issued under the Rehabilitation Act. *See id.* at 1264. We address, below, why Concordia Prep's reliance on similar Title IX regulations is unpersuasive.

The last case for analysis is *Stewart* v. *New York Univ.*, 430 F. Supp. 1305 (S.D.N.Y. 1976). Therein, the district court, considering a claim under Title VI of the Civil Rights Act of 1964, perfunctorily stated that "the Court finds the Federal tax benefits granted to the Law School insufficient to support a claim . . . ." *Id.* at 1314. Once again, Concordia Prep relies on a conclusion offered without any supporting analysis. In short, the district court cases on which Concordia Prep relies fail to offer a compelling case for reversal.

Concordia Prep's reliance on the regulations defining "federal financial assistance" under Title IX also fails to compel reversal here. To begin with,

as explained above, these regulations actually support affirmance here. But whether something constitutes "federal financial assistance" does not present any ambiguity; rather, it is in the nature of the routine statutory construction inquiry that courts perform day-in and day-out.

So-called *Chevron* deference is therefore neither necessary nor appropriate here. As the *Chevron* case itself recognized, "[i]f the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress." *Chevron, Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also Johnson* v. *Guzman Chavez*, 141 S. Ct. 2271, 2291 n.9 (2021) ("*Chevron* deference does not apply where the statute is clear"); *Peltier* v. *Charter Day School, Inc.*, 37 F.4th 104, 128 (4th Cir. 2022) (en banc) ("because we conclude that Title IX unambiguously applies to sex-based dress codes, we do not reach the question whether a department's rescission of its prior regulation would be entitled to deference").

Concordia Prep also relies on the contents of a publication titled "DOJ Title VI Legal Manual," the publication date of which is not readily apparent. What is readily apparent, however, is that this publication does not purport to announce official Department of Justice policy; rather, the

publication serves in the nature of a treatise discussing case law relevant to its areas of discussion. Concordia Prep's brief cites (or, unfortunately, mis-cites, because it refers to the wrong pages of the Joint Appendix) two passages from the Manual. Blue Br. at 18-19.

At JA176, the Manual states that "[t]ypical tax benefits—tax exemptions, tax deductions, and most tax credits—are not considered federal financial assistance," citing three cases. But the very next paragraph of the Manual states that "while these cases suggest that typical case benefits are not federal financial assistance, a few courts have found instances where tax benefits would be considered federal financial assistance." JA176. The Manual takes no policy position on which approach is correct or incorrect as a matter of law.

Concordia Prep's brief goes on to cite another portion of the Manual, which actually appears at JA183. Blue Br. at 19. There, under the heading "What/Who Is a Recipient?" and the subheading "Direct Recipient" (JA181-182), the Manual states that "[t]he clearest means of identifying a 'recipient' of federal financial assistance is to determine whether the entity has voluntarily entered into a relationship with the federal government and receives federal assistance under a condition or assurance of

compliance with Title VI . . . ." JA183. Yet in its very next paragraph, the Manual recognizes that "[e]ven without a written or signed assurance, however, acceptance of federal financial assistance triggers coverage under Title VI." JA183-184.

The next subsection of the Manual is titled "Indirect Recipient." It begins, "[f]inding that an entity directly receives federal financial assistance is usually the easiest way to identify a Title VI recipient. It is not, of course, the only way." JA184. In short, Concordia Prep's reliance on snippets from the Manual might strike an objective observer as selective and self-serving, because a broader review of the relevant portions of the Manual confirms that the publication fails to favor either side on the merits of the issue presented in this appeal.

In sum, neither the district court decisions on which Concordia Prep relies nor the regulations providing examples of what constitutes federal financial assistance compel reversal here.

### D. The Policy Arguments That Concordia Prep Advances For Reversal Are Unpersuasive

Concordia Prep also advances a couple of policy reasons that it believes favor reversal, but neither has merit.

First, the argument that it would be difficult or costly for a smaller school like Concordia Prep to comply with Title IX's requirements fails to persuade. Title IX applies to numerous secondary schools from kindergarten through twelfth grade. *See* Amy B. Cyphert, *Objectively Offensive: The Problem of Applying Title IX to Very Young Students*, 51 Family L.Q. 325, 328 (2017).

Small colleges and secondary schools, including public schools regardless of their size, routinely comply with Title IX as applicable to them without issue. *See Franklin* v. *Gwinnett County Public Schools*, 503 U.S. 60 (1992) (recognizing that Title IX applied to an Atlanta-area public school system). Concordia Prep's assertion that it would need to hire additional employees or sustain additional expense is without any support in the record.

Indeed, we were shocked to discover that the citation that Concordia Prep offered in its Brief for Appellant at the bottom of page 33 for the

quotation, "[m]any of these directives would be nearly impossible for small or modest sized independent schools to comply with" — JA502 — was to an attorney's argument contained in an amicus brief filed in the district court in support for Concordia Prep's motion for reconsideration. That quotation is not *evidence* or testimony of record; rather, it consists of merely argument in an amicus brief. *Id.*

Second, the assertion that it would be difficult for charitable organizations to comply with the highly laudatory requirements of Spending Clause legislation if 501(c)(3) status were to equate to receiving federal financial assistance also provides no persuasive argument for reversal. A 501(c)(3) organization retains the ability to opt-out of being subjected to any Spending Clause requirements that the organization deems objectionable by forfeiting its 501(c)(3) status. Just as here, if Concordia Prep does not want to have Title IX apply to it going forward, it can forfeit its 501(c)(3) status. That contract-like determination, whether to accept the burdens that accompany being a federal financial assistance recipient under 501(c)(3), remains open for any existing 501(c)(3) organization to resolve as it sees fit.

## VI. CONCLUSION

For all of the foregoing reasons, the district court's order denying Concordia Prep's motion for partial summary judgment should be affirmed.

Respectfully submitted,

Dated: August 4, 2023

*/s/ Howard J. Bashman*
Howard J. Bashman
500 Office Center Drive
Suite 400
Fort Washington, PA 19034
(215) 830–1458

Brian Ketterer
Whitney J. Butcher
KETTERER, BROWNE &
 ASSOCIATES, LLC
336 South Main Street
Bel Air, MD 21014
(410) 896-6037

Counsel for Plaintiffs/Appellees

## CERTIFICATION OF COMPLIANCE WITH TYPE–VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type–volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,700 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Book Antiqua font.

Dated: August 4, 2023               */s/ Howard J. Bashman*
                                    Howard J. Bashman

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel are Filing Users of the Fourth Circuit's CM/ECF system, and this document is being served electronically on them by the Notice of Docket Activity.

Dated: August 4, 2023              */s/ Howard J. Bashman*
                                                Howard J. Bashman