**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1453

DONNA BUETTNER-HARTSOE; N.H., by and through her Parent and Next Friend Donna Buettner-Hartsoe,

　　　　　Plaintiffs - Appellees,

　　v.

BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION, d/b/a Concordia Preparatory School,

　　　　　Defendant - Appellant,

　　and

LUTHERAN CHURCH-MISSOURI SYNOD,

　　　　　Defendant.

------------------------------

ASSOCIATION OF INDEPENDENT MARYLAND & DC SCHOOLS; NATIONAL ASSOCIATION OF INDEPENDENT SCHOOLS; NATIONAL BUSINESS OFFICERS ASSOCIATION; ASSOCIATION OF INDEPENDENT SCHOOLS OF GREATER WASHINGTON; SOUTHERN ASSOCIATION OF INDEPENDENT SCHOOLS; VIRGINIA ASSOCIATION OF INDEPENDENT SCHOOLS; NORTH CAROLINA ASSOCIATION OF INDEPENDENT SCHOOLS; PALMETTO ASSOCIATION OF INDEPENDENT SCHOOLS; ASSOCIATION OF CHRISTIAN SCHOOLS INTERNATIONAL; AMERICAN ASSOCIATION OF CHRISTIAN SCHOOLS; ASSOCIATION FOR BIBLICAL HIGHER EDUCATION; INTERNATIONAL ALLIANCE FOR CHRISTIAN EDUCATION; INSTITUTE FOR JUSTICE; NAPA INSTITUTE LEGAL FOUNDATION; THOMAS MORE SOCIETY,

　　　　　Amici Supporting Appellant.

EQUAL RIGHTS ADVOCATES; MARYLAND COALITION AGAINST SEXUAL ASSUALT; NATIONAL ALLIANCE TO END SEXUAL VIOLENCE; NATIONAL COUNCIL OF JEWISH WOMEN; PUBLIC JUSTICE; ROCKY MOUNTAIN VICTIM LAW CENTER; STOP SEXUAL ASSUALT IN SCHOOLS; WOMEN'S LAW PROJECT,

     Amici Supporting Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge. (1:20-cv-03132-RDB)

Argued: January 25, 2024            Decided: March 27, 2024

Before THACKER, HARRIS, and RUSHING, Circuit Judges.

Reversed and remanded by published opinion. Judge Thacker wrote the opinion, in which Judge Harris and Judge Rushing joined.

**ARGUED:** Gregg Edward Viola, ECCLESTON & WOLF, P.C., Hanover, Maryland, for Appellant. Howard Jonathan Bashman, LAW OFFICES OF HOWARD J. BASHMAN, Fort Washington, Pennsylvania, for Appellees. Joshua W.B. Richards, for Amicus National Association of Independent Schools. Sean Ouellette, for Amici Civil Rights and Survivor Advocacy Organizations. **ON BRIEF:** Mark P. Johnson, ECCLESTON & WOLF, P.C., Hanover, Maryland, for Appellant. Brian Ketterer, Whitney J. Butcher, KETTERER, BROWNE & ASSOCIATES, LLC, Bel Air, Maryland, for Appellees. James P. Ulwick, Geoffrey H. Genth, Steven M. Klepper, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Amicus The Association of Independent Maryland & DC Schools. J. Douglas Baldridge, Washington, D.C., Geoffrey R. Garinther, Evan T. Shea, William B. King, Elizabeth C. Rinehart, VENABLE LLP, Baltimore, Maryland; Joshua W.B. Richards, SAUL EWING LLP, Philadelphia, Pennsylvania, for Amici The National Association of Independent Schools, The National Business Officers Association, The Association of Independent Schools of Greater Washington, The Southern Association of Independent Schools, The Virginia Association of Independent Schools, The North Carolina Association of Independent Schools, and the Palmetto Association of Independent Schools. Megan H. Mann, NATIONAL ASSOCIATION OF INDEPENDENT

2

SCHOOLS, Washington, D.C., for Amicus National Association of Independent Schools. John J. Bursch, Gregory S. Baylor, Ali Kilmartin, ALLIANCE DEFENDING FREEDOM, Lansdowne, Virginia; Stephen J. Hammer, Dallas, Texas, Thomas G. Hungar, Russell Balikian, Lavi M. Ben Dor, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Amici Association of Christian Schools International, American Association of Christian Schools, Association for Biblical Higher Education, and International Alliance for Christian Education. Paul M. Sherman, INSTITUTE FOR JUSTICE, Arlington, Virginia, for Amicus Institute for Justice. Roman Martinez, G. Charles Beller, Alexander G. Siemers, LATHAM & WATKINS LLP, Washington, D.C., for Amicus Napa Institute Legal Foundation. Thomas Brejcha, B. Tyler Brooks, THOMAS MORE SOCIETY, Chicago, Illinois, for Amicus Thomas More Society. Sean Ouellette, Shariful Khan, Adele P. Kimmel, PUBLIC JUSTICE, Washington, D.C., for Amici Civil Rights and Survivor Advocacy Organizations.

THACKER, Circuit Judge:

N.H. was a student at Concordia Preparatory School ("Concordia Prep").[1] In 2020, N.H. and her mother, Donna Buettner-Hartsoe ("Appellees") sued Concordia Prep for violating Title IX of the Education Amendments of 1972 ("Title IX"). To support their Title IX claim, Appellees alleged that Concordia Prep received federal financial assistance so as to trigger mandatory Title IX compliance. Concordia Prep moved to dismiss Appellees' Title IX claim on the ground that it was not subject to Title IX because it did not receive federal financial assistance. Appellees opposed Concordia Prep's motion, arguing that the school's 26 U.S.C. § 501(c)(3) tax exempt status constituted federal financial assistance for Title IX purposes.

The district court agreed with Appellees and denied Concordia Prep's motion to dismiss. But the district court nonetheless certified an interlocutory appeal on the issue of whether § 501(c)(3) status constitutes receiving federal financial assistance for Title IX purposes. We granted Concordia Prep's interlocutory appeal.

We conclude that § 501(c)(3) status does not constitute receipt of federal financial assistance. Therefore, we reverse and remand to the district court for further proceedings.

---

[1] Baltimore Lutheran High School Association, doing business as Concordia Preparatory School.

I.

A.

N.H. was a student at Concordia Prep during the 2017–18 academic year. She alleges that during that time, she was sexually harassed, assaulted, and bullied at school. As this is an interlocutory appeal separate from the merits of N.H.'s harassment, we do not detail the facts relative to N.H.'s allegations.

Concordia Prep is a Lutheran private school. It is organized as a nonprofit and has federal tax exempt status pursuant to 26 U.S.C. § 501(c)(3).

B.

In 2020, Appellees sued Concordia Prep, alleging violations of Maryland state law and Title IX.[2] Appellees alleged that because Concordia Prep receives federal education funding, it is subject to Title IX. Concordia Prep filed a Partial Motion to Dismiss, asserting that Concordia Prep did not receive federal education funding during N.H.'s academic year. Concordia Prep admitted receiving grants from the State of Maryland but denied receiving any direct federal funding or federal financial assistance. Thus, Concordia Prep argued that it was not subject to Title IX and, therefore, Appellees' Title IX claim should be dismissed. Appellees opposed Concordia Prep's motion. They argued

---

[2] Appellees' state law claims are not currently before us, as Concordia Prep moved to dismiss only the Title IX claim.

that Concordia Prep's tax exempt status pursuant to § 501(c)(3) qualified as federal financial assistance.[3]

The district court denied Concordia Prep's motion. It held that Concordia Prep's § 501(c)(3) tax exempt status constituted federal financial assistance for purposes of Title IX. Therefore, the district court reasoned that Concordia Prep could not "avail itself of federal tax exemption but not adhere to the mandates of Title IX." J.A. 111.[4]

Concordia Prep filed a Motion for Reconsideration or to Certify an Order for Interlocutory Appeal. Concordia Prep argued that § 501(c)(3) status was not federal financial assistance and thus did not trigger Title IX compliance. The district court denied the Motion for Reconsideration but granted the Motion to Certify an Order for Interlocutory Appeal. We granted Concordia Prep's Petition for Leave to Appeal on the legal issue of whether § 501(c)(3) status constitutes receipt of federal financial assistance for purposes of Title IX.

II.

On interlocutory appeal, we employ the usual appellate standard governing motions to dismiss. *Dyer v. Smith*, 56 F.4th 271, 276 (4th Cir. 2022). We consider questions of law de novo and construe the evidence in the light most favorable to the non-movant. *EEOC v. Seafarers Int'l Union*, 394 F.3d 197, 200 (4th Cir. 2005).

---

[3] Before ruling on Concordia Prep's motion, the district court consolidated Appellees' case with four other cases lodging similar Title IX claims against Concordia Prep.

[4] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

III.

A.

Title IX was enacted in 1972 to combat gender discrimination in education. Section 901(a) of Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." Title IX of the Education Amendments of 1972, Pub. L. No. 92–318, § 901(a), 86 Stat. 235, 373 (codified at 20 U.S.C. § 1681(a)). Like other federal anti-discrimination measures,[5] the hook for Title IX to apply is receiving federal financial assistance. But that phrase is undefined in the statute. Therefore, in this case, we are tasked with determining whether § 501(c)(3) tax exempt status equates to "receiving Federal financial assistance" so that Title IX applies.

B.

We begin with the text. We look to Title IX's language and to the ordinary meaning of the words it uses. *See United States v. Mills*, 850 F.3d 693, 697 (4th Cir. 2017). Dictionaries cast light on the ordinary meaning of "receiving Federal financial assistance."

---

[5] Title VI prohibits race discrimination in "any program or activity receiving Federal financial assistance." Title VI of the Civil Rights Act of 1964, Pub. L. No. 88–352, § 601, 78 Stat. 241, 252 (codified at 42 U.S.C. § 2000d). Section 504 prohibits discrimination on the basis of disability in "any program or activity receiving Federal financial assistance." Rehabilitation Act of 1973, Pub. L. No. 93–112, § 504, 87 Stat. 355, 394 (codified at 29 U.S.C. § 794(a)). And § 303 of the Age Discrimination Act prohibits discrimination on the basis of age in "any program or activity receiving Federal financial assistance." Age Discrimination Act of 1975, Pub. L. No. 94–135, § 303, 89 Stat. 713, 728 (codified at 42 U.S.C. § 6102).

7

*See Davidson v. United Auto Credit Co.*, 65 F.4th 124, 129 (4th Cir. 2023) ("Searching for the plain meaning of a statute's text often starts with reading dictionaries published close in time to when it was enacted."). To "receive" means "to take," "to accept," and to "come into possession of (something)." *Webster's New Collegiate Dictionary* 705 (1961); *Webster's Seventh New Collegiate Dictionary* 714 (1965); *The American College Dictionary* 1010 (1970). And "assistance" means "aid," "help," or "support." *Webster's New Collegiate Dictionary* 54 (1961); *Webster's Seventh New Collegiate Dictionary* 53 (1965); *The American College Dictionary* 76 (1970). "Financial" describes "assistance," and means "relating to" or "pertaining to finance." *Webster's New Collegiate Dictionary* 311 (1961); *Webster's Seventh New Collegiate Dictionary* 309 (1965). And at least one definition of "financial" contemplates "monetary receipts and expenditures," which indicates a flow of funds. *The American College Dictionary* 453 (1970).

Taken together then, the phrase "receiving Federal financial assistance" means taking or accepting federal financial aid, help, or support. Thus, the plain text of Title IX contemplates the transfer of funds from the federal government to an entity.[6] This reading

---

[6] This plain text reading is underscored by federal regulations interpreting the phrase "Federal financial assistance." *See, e.g.*, 31 C.F.R. § 28.105 (Department of the Treasury); 34 C.F.R. § 106.2(g) (Department of Education); 40 Fed. Reg. 24128 (Department of Health, Education, and Welfare). Those regulations state:
> Federal financial assistance means any of the following, when authorized or extended under a law administered by the Federal agency that awards such assistance:
> (1) A grant or loan of Federal financial assistance, including funds made available for:
> (i) The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and

(Continued)

8

is consistent with Title IX's neighboring provision which grants enforcement authority to agencies "empowered to extend Federal financial assistance . . . by way of grant, loan, or contract other than a contract of insurance or guaranty." 20 U.S.C. § 1682. This neighboring provision's list -- "grant, loan, or contract" -- suggests very strongly that § 1681(a)'s "Federal financial assistance" should be read similarly, and thus limited to affirmative forms of assistance.

With the above dictionary definition in hand, we turn to Supreme Court precedent which has construed the scope of when federal financial assistance includes indirect assistance. The Supreme Court has held that federal financial assistance includes assistance through an intermediary.

---

(ii) Scholarships, loans, grants, wages or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
(2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
(3) Provision of the services of Federal personnel.
(4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.
(5) Any other contract, agreement, or arrangement that has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

31 C.F.R. § 28.105. Each of the examples contemplates the flow of assets or resources from the federal government to an entity, consistent with the plain meaning of the phrase.

9

In *Grove City College v. Bell*, the Court held that "receiving" included receiving federal grants through indirect means. 465 U.S. 555, 563–70 (1984). There, Grove City College enrolled students who received federal aid and paid that aid to the school. *Id.* at 560–62. Key to the Court's analysis was that even though the aid flowed through an intermediary, the school was still a recipient of the aid. *Id.* at 569–70.

In contrast, in later cases, the Court differentiated between receiving indirect assistance, as in *Grove City*, and merely benefitting indirectly from federal assistance. The Court reasoned that receiving federal financial assistance "covers those who receive the aid, but does not extend as far as those who benefit from it." *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 607 (1986). Because "Congress tied the regulatory authority to those programs or activities that *receive* federal financial assistance; the key is to identify the recipient of that assistance." *Id.* Put differently, "Title IX coverage is not triggered when an entity merely benefits from federal funding." *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 468 (1999).

So "receiving" federal financial assistance includes direct assistance or assistance through an intermediary, but it does not include mere beneficiaries. In other words, the phrase "receiving Federal financial assistance" means taking or accepting federal financial aid, help, or support, even when that assistance is through an intermediary.

C.

Before applying this definition to entities with tax exempt status, we briefly explain tax exemption. Tax exemption for charitable institutions is deeply rooted in American history. *Bob Jones Univ. v. United States*, 461 U.S. 574, 588 (1983) ("Tax exemptions for

10

certain institutes thought beneficial to the social order of the country as a whole, or to a particular community, are deeply rooted in our history, as in that of England."). Section 501(c)(3) provides that "[c]orporations . . . organized and operated exclusively for religious, charitable . . . or educational purposes" are entitled to tax exemption. 26 U.S.C. § 501(c)(3). Along with requiring that entities be organized and operated for an exempt purpose, § 501(c)(3) prevents private inurement, limits lobbying, and prohibits electioneering. *Id.* Organizations that meet these requirements, and apply for exemption, are exempt from federal income taxes. *Id.* § 501(c)(1)(A). And when taxpayers donate to organizations with § 501(c)(3) status, they can claim a charitable deduction. *Id.* § 170.

The requirement that organizations be operated for an exempt purpose disqualifies organizations that operate for illegal purposes or engage in activities contrary to clearly established public policy. *Bob Jones*, 461 U.S. at 592.[7]

Tax exempt status is a tax benefit. *Bob Jones*, 460 U.S. at 587–88. Tax exempt organizations keep the amount of tax they would have paid on their income. And by exempting organizations from tax, "all taxpayers are affected" because "other taxpayers can be said to be indirect and vicarious 'donors.'" *Id.* at 591. But even though "exemptions and deductions . . . are like cash subsidies," they are not "in all respects identical." *Regan v. Tax'n with Representation of Wash.*, 461 U.S. 540, 544 n.5 (1983). "A subsidy involves

---

[7] The IRS has not issued regulations requiring tax exempt organizations to comply with Title IX, nor has it revoked tax exemption based on gender discrimination. Thus, we need not decide whether the IRS could condition tax exempt status on organizations following Title IX or whether ending gender discrimination in schools is a fundamental public policy akin to ending racial discrimination in schools in *Bob Jones*. 461 U.S. at 592.

11

the direct transfer of public monies to the subsidized enterprise and uses resources exacted from taxpayers as a whole. An exemption, on the other hand, involves no such transfer." *Walz v. Tax Comm'n of New York*, 397 U.S. 664, 690 (1970) (Brennan, J., concurring).

D.

With that background, we address the issue at hand. Do organizations with tax exempt status "receiv[e] Federal financial assistance" for Title IX purposes? Incorporating the plain meaning of that phrase, does tax exempt status constitute accepting federal financial aid, help, or support? We think not.

1.

Tax exemption is not "Federal financial assistance." This is not a novel concept. Indeed, since Title IX's inception over fifty years ago, it has never been applied to organizations based solely on their tax exempt status. And for good reason. Although tax exemption is a tax benefit, that does not mean it is "Federal financial assistance" for Title IX purposes. As noted above, "assistance" means "aid, help, or support," which all connote financial grants. Tax exemption, however, is the withholding of a tax burden, rather than the affirmative grant of funds. Thus, tax exemption is not "Federal financial assistance."

The meaning of "receiving" financial assistance underscores our conclusion. Appellees argue that tax exemption is akin to the indirect grants in *Grove City*. They argue that because § 501(c)(3) status results in a monetary benefit to tax exempt entities, it is the same as the IRS granting funds to tax exempt entities. We are unconvinced. In *Grove City*, the college received federal education funding through its students. 465 U.S. at 559.

12

Even though it received the funding through indirect means, that is, its students, there was still a grant of federal aid to the school. *Id.* at 564. In contrast, with tax exemption, no funds actually change hands. Tax exemption merely allows organizations to keep the money they otherwise would owe in income tax. Therefore, tax exemption is distinguishable from the federal grants in *Grove City* as tax exemption is an indirect benefit, as opposed to federal financial aid through indirect means. *See Nat'l Collegiate Athletic Ass'n*, 525 U.S. at 468 ("Title IX coverage is not triggered when an entity merely benefits from federal funding.").

2.

Appellees also argue that 26 U.S.C. § 170's charitable contribution deduction is like the indirect grants in *Grove City*. They argue that because donors can receive a § 170 deduction when they donate to tax exempt organizations like Concordia Prep, those organizations receive more money through donations than they otherwise would have if the donors received no deduction. An example illustrates their argument. If a donor whose federal income tax rate is twenty percent wishes to donate $100 of their post-tax income, this $100 donation costs $125 pre-tax. But if the donor elects a § 170 deduction, the donor effectively avoids paying tax on the $100 donation -- meaning it costs only $100 pre-tax. Appellees argue that this $25 difference allows tax exempt organizations like Concordia Prep to receive higher donations. Appellees contend that these higher donations are functionally the same as the indirect grants in *Grove City*. We disagree.

Section 170's charitable contribution deduction, like § 501(c)(3) tax exempt status, is far afield from *Grove City*'s funding-by-intermediary scheme. In *Grove City*, federal

13

funds were dispersed, through students, to the school. 465 U.S. at 559. But here, donors do not actually receive any federal funds by claiming a charitable deduction. Instead, they are merely allowed to donate the full pre-tax amount of their donation. Thus, the charitable contribution deduction is not federal financial assistance for Title IX purposes. And even if it were, any benefit that Concordia Prep receives by donors potentially donating more after claiming § 170's charitable contribution deduction is far too attenuated to constitute "receiving" federal financial assistance.[8]

### IV.

For these reasons, we hold that tax exempt status pursuant to 26 U.S.C. § 501(c)(3) does not equate to "receiving Federal financial assistance" for purposes of Title IX. Therefore, we reverse the district court and remand for further proceedings.

*REVERSED AND REMANDED*

---

[8] Because the plain meaning of Title IX excludes tax exempt status from qualifying as "receiving Federal financial assistance," we need not reach the alternate grounds for reversal raised by Concordia Prep and amici.